IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| **DEVONNA JEAN PARSONS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 3:13-30135 |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on the Parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 7 and 8.)

The Plaintiff, Devonna Jean Parsons (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on April 11, 2011 (protective filing date), alleging disability as of January 23, 2010, due to ".".[1] (Tr. at 15, 142-45, 146, .) The claims were denied initially and upon reconsideration. (Tr. at 15, 85-88, 89-94, 96-98, 99-101.) On October 24, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 102-03.) The hearing was held on July 17, 2012, before the Honorable Jason R. Yoder. (Tr. at 34-84.) By decision dated August 7, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-28.) The ALJ's decision became the final decision of

---

[1] On his form Disability Report - Appeal, dated August 24, 2010, Claimant reported that her bipolar disorder, depression, and post-traumatic stress disorder had worsened, as well as her back and left leg problems. (Tr. at 306.)

the Commissioner on September 25, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 5-10.) On November 25, 2013, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§

404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three,

four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

> decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since January 23, 2010, the alleged onset date. (Tr. at 17, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "obesity, diabetes mellitus; lumbar strain/sprain with radiculopathy; depressive disorder, NOS/bipolar disorder; and anxiety disorder, NOS," which were severe impairments. (Tr. at 18, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform less than the full range of light exertional level work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift/carry 20 pounds occasionally and 10 pounds frequently, sit for six hours of an eight-hour workday, and stand/walk six hours of an eight-hour workday. She must be able to sit at the workstation 5 to 10 minutes each hour. She can occasionally climb ladders, ropes, scaffolds, ramps, and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She should avoid moderate exposure to workplace hazards such as moving machinery and unprotected heights and extreme heat. She should avoid concentrated exposure to extreme cold, vibration, and airborne pollutants such as fumes, dusts, odors, gases, and poor ventilation. She can perform simple, repetitive type tasks without any rate or produce pace requirements. She can have occasional contact with the public, supervisors, and co-workers.

(Tr. at 20, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform her past relevant work. (Tr. at 26, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a sorter, price marker, and laundry worker, at the unskilled, light level of exertion, and as a hand packer,

at the unskilled, sedentary level of exertion. (Tr. at 27-28, Finding No. 10.) On this basis, benefits were denied. (Tr. at 28, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on June 2, 1969, and was 43 years old at the time of the administrative hearing, July 17, 2012. (Tr. at 26, 42, 46.) Claimant had at least a high school education and was able to communicate in English. (Tr. at 26, 42, .). Claimant had past relevant work as a certified nursing assistant. (Tr. at 26, .)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence

because the ALJ failed to consider the combined impact of Claimant's physical and mental impairments in assessing her credibility. (Document No. 11 at 5-9.) Claimant asserts that the ALJ failed to discuss in a meaningful way why he disregarded her subjective complaints of pain, fatigue, and other symptoms. (Id. at 7.) Citing Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987), Claimant argues that she satisfied the requirements of 42 U.S.C. § 423(d)(5)(A), and that the evidence of record is supported by substantial evidence. (Id. at 7-8.) Claimant asserts that her allegations and the medical evidence of record are mutually supportive. (Id. at 7.) She further asserts that the ALJ neglected to analyze her allegations pursuant to SSR 96-7p, by using boilerplate language and conclusory statements. (Id. at 8-9.)

In response, the Commissioner asserts that Claimant's argument is without merit. (Document No. 12 at 10-13.) The Commissioner asserts that the ALJ evaluated Claimant's pain and associated limitations pursuant to the factors set forth in the Regulations. (Id. at 11.) The Commissioner notes that the evidence indicated that despite Claimant's allegations of low back pain, the MRI results were normal and that she consistently exhibited normal strength, sensation, and negative straight leg raising tests. (Id. at 12.) Dr. Mukkamala determined that Claimant's low back impairment constituted only an eight percent whole body impairment for purposes of workers' compensation. (Id. at 12.) The Commissioner further notes that the ALJ acknowledged that Claimant's treatment was conservative in nature and consisted of physical therapy, two steroid injections, medications, and mental health counseling. (Id.) The ALJ also considered Claimant's activities of daily living, which were inconsistent with her allegations of disabling impairment. (Id. at 13.) Thus, the Commissioner contends that the ALJ's credibility assessment is supported by the substantial evidence of record. (Id.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider properly the opinion of her treating psychiatrist, Dr. Nika

Razavipour, M.D. (Document No. 11 at 9-11.) Claimant asserts that the ALJ failed to explain in any meaningful manner why he disregarded Dr. Razavipour's opinion. (Id. at 9.) To the extent that the ALJ found that Dr. Razavipour's opinion was not entitled to controlling weight, Claimant asserts that pursuant to SSR 96-2p, the ALJ should not have rejected her opinion. (Id. at 10-11.)

In response, the Commissioner asserts that the substantial evidence supports the ALJ's decision to give Dr. Razavipour's opinion little weight. (Document No. 12 at 13-16.) The Commissioner asserts that the ALJ properly determined that Dr. Razavipour's opinions were inconsistent with her treatment notes. (Id. at 14.) She notes that in April, 2012, Dr. Razavipour assessed a GAF of 65, but three months later, without any intervening treatment notes evidencing a decline in Claimant's condition, Dr. Razavipour opined that Claimant's symptoms were severe and assessed a GAF of 56. (Id. at 14-15.) The Commissioner asserts that treatment notes from Prestera do not support Dr. Razavipour's extreme and marked limitations. (Id. at 15.) Additionally, the Commissioner asserts that Dr. Razavipour's findings are inconsistent with the other evidence of record, including treatment records from St. Mary's and Dr. Reynolds. (Id.) Accordingly, the Commissioner contends that the ALJ's decision to give Dr. Razavipour's opinion little weight is supported by the substantial evidence of record. (Id. at 15-16.)

Analysis.

1. Claimant's Credibility.

Claimant alleges that the ALJ erred in assessing her credibility. (Document No. 11 at 5-9.) A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2012); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). A claimant's

"statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. §§ 404.1529(a) and 416.929(a) (2012) If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Craig v. Chater, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). In Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (*citing* Craig v. Chater, 76 F.3d at 595), the Fourth Circuit stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2012). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
>     (i) Your daily activities;
>
>     (ii) The location, duration, frequency, and intensity of your pain or other

9

>    symptoms.
>
>    (iii) Precipitating and aggravating factors;
>
>    (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
>    (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
>    (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
>    (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2012).

>    SSR 96-7p repeats the two-step regulatory provisions:
>
>    First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
>    Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements.

10

Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 20.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 21.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 21-26.) At the second step of the analysis, the ALJ concluded that

"the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 21.)

Claimant argues that under the mutually supportive test recognized in Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987), that he satisfies the requirements of 42 U.S.C. § 423(d)(5)(A), because the evidence of record, including his testimony and statements, is supported by substantial evidence. (Document No. 12 at 7-8.) Claimant has misinterpreted the holding in Coffman. In that case, the issue was not one of credibility but whether the ALJ applied the appropriate standard in weighing the treating physician's opinion that the claimant was disabled from gainful employment. Coffman, 829 F.2d at 517-18. The Fourth Circuit concluded that the ALJ had misstated the legal principles and standards and improperly discounted the physician's opinion due to a lack of corroborating evidence. Id. at 518. The Court held that the correct standard required a treating physician's opinion to be "ignored *only* if there is persuasive contradictory evidence." Id. There, the physician provided medical reports with his opinion letter. Id. The record also included findings of two other physicians and the testimony of the claimant. Id. In view of the of the supporting evidence, the Fourth Circuit noted that [b]ecause Coffman's complaints and his attending physician's findings were mutually supportive, they would satisfy even the more exacting standards of the Social Security Disability Benefits Reform act of 1984, 42 U.S.C. § 423(d)(5)(A)." Id. Accordingly, the undersigned finds contrary to Claimant's argument that Coffman fails to offer any "mutually supportive" test applicable to assessing a claimant's credibility. For the reasons set forth herein, the undersigned finds Coffman inapposite and Claimant's argument without merit.

In his decision, the ALJ properly assessed Claimant's credibility pursuant to the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and SSR 96-7p. The ALJ first acknowledged

Claimant's testimony, including her allegations of disabling impairments, treatment, factors that exacerbated and relieved her pain and other symptoms, and her subjective limitations. (Tr. at 21.) The ALJ then proceeded to summarize the medical and psychiatric evidence of record. (Tr. at 21-25.)

The evidence of record reveals that Claimant injured her lower back on January 23, 2010, when assisting a resident bathing. (Tr. at 21, 276.) Lumbar spine x-rays were normal (Tr. at 21, 275.) at MedExpress, and physical examination revealed decreased range of motion of the lumbar spine and decreased sensation, but her gait and station, motor strength, and straight leg raising test were normal. (Tr. at 21, 276.) She was diagnosed with lumbosacral strain with radiculopathy and was advised to rest and use moist heat and Flexeril and Lortab for pain. (Tr. at 21, 276, 279.) Claimant returned to MedExpress three days later, on January 26, 2010, at which time she exhibited normal gait and station, strength, sensation, and straight leg raising test. (Tr. at 21, 281.) An MRI of Claimant's lumbar spine on February 3, 2010, was normal. (Tr. at 22, 268.)

Claimant underwent chiropractic treatment from February, 2010, through March, 2010. (Tr. at 22, 311-19.) Claimant also underwent treatment at St. Mary's Medical Center, including epidural injections for her back strain (Tr. at 22, 321-26.), physical therapy, and use of a TENS Unit. (Tr. at 22, 376-474.) On April 14, 2011, Dr. Allen Young, M.D., a physician at St. Mary's Occupational Health Center, opined that Claimant was capable of returning to work that required no lifting in excess of 30 pounds or repetitive or prolonged bending or stooping. (Tr. at 458.)

On October 14, 2010, Dr. Prasadarao B. Mukkamala, M.D., conducted an independent examination for purposes of workers' compensation. (Tr. at 22, 327-44.) On physical examination, Dr. Mukkamala observed normal motor strength, sensation, and range of motion in her upper extremities. (Tr. at 22, 332-33.) She had normal strength, sensation, and range of motion of the lower extremities; hypoactive but symmetrical deep tendon reflexes; and positive straight leg raising test in supine

13

position. (Tr. at 22, 333.) She had reduced range of motion of her lumbar spine, but was able to ambulate independently and with a fairly normal gait, was able to walk on her heels and toes fairly well, and was able to squat halfway. (Id.) Dr. Mukkamala opined that Claimant had reached maximum degree of medical improvement and that she had an eight percent whole person impairment based on her back impairment. (Tr. at 22, 334-36.) He further opined that Claimant did not require any maintenance care and that she should continue with her home exercise program. (Tr. at 22, 334.)

Claimant underwent a work hardening program from November, 2010, through December, 2010. (Tr. at 22, 346-75.) Dr. Lambrechts, a State agency physician, opined that Claimant was capable of performing light exertional level work with occasional postural limitations and an avoidance of concentrated exposure to cold, vibration, and hazards. (Tr. at 25, 475-83.) The ALJ gave his opinion great weight as it was supported by the treatment records and MRI findings. (Tr. at 25.) Dr. Reddy, another State agency physician, opined that Claimant could perform medium exertional level work, with occasional postural limitations; an avoidance of concentrated exposure to extreme cold, vibration, fumes, dusts, odors, gases, and poor ventilation; and an avoidance of even moderate exposure to extreme heat or hazards. (Tr. at 25, 504-12.)

In view of the foregoing evidence, the ALJ concluded that although Claimant suffered from a lumbar strain condition, the objective evidence did not support her allegations of disabling pain and other symptoms. (Tr. at 23.) The ALJ noted that Claimant's condition improved with physical therapy, MRI results were negative, physical examinations failed to reveal significant positive findings, and she did not require surgical intervention. (Id.) The ALJ further found that Claimant's obesity and diabetes did not establish any significant limitations. (Id.) He found, however, that Claimant's continued smoking was inconsistent with her reports to Dr. Mukkamala that she was not smoking, as well as her reports that she could not afford health care but had money to buy cigarettes. (Tr. at 24-25.)

The ALJ also summarized the mental health evidence of record, including Ms. Reynolds' consultative examination and her diagnoses of depressive disorder NOS and anxiety disorder NOS. (Tr. at 24, 484-88.) On mental status examination, Claimant easily established rapport, was cooperative and maintained good eye contact, and exhibited an euthymic mood and broad and appropriate affect. (Tr. at 24, 486.) The exam essentially was normal with findings of fair insight and adequate judgment; normal concentration, persistence, and pace; and no negative findings regarding her social functioning and activities of daily living. (Tr. at 24, 486-87.) Ms. Reynolds opined that Claimant's prognosis was fair and that she was capable of managing her financial benefits. (Tr. at 24, 487.)

Claimant treated at Prestera Mental Health Center from October 20, 2011, through June 22, 2012. (Tr. at 24, 513-74.) She initially was diagnosed with bipolar disorder and assessed a GAF of 55. (Tr. at 24, 521.) Her treating psychiatrist however, assessed bipolar disorder and a GAF of only 48 on November 2, 2011, when Claimant began cognitive behavioral therapy. (Tr. at 24, 537.) Claimant was started on psychotropic therapy and she reported on November 16, 2011, decreased anxiety and depressive symptoms, with increased physical activity. (Tr. at 24, 539.) On that date, her GAF was assessed at 60. (Tr. at 24, 543.) Claimant reported that she was "good" on March 28, 2012, and reported a positive improvement in social skills and increased time outside. (Tr. at 24, 561.) On April 12, 2012, Dr. Razavipour assessed a GAF of 65. (Tr. at 24, 563.)

On July 18, 2012, Dr. Razavipour completed a form Mental Ability to Do Work-Related Activities (Mental) and opined that Claimant's bipolar disorder was severe in nature and symptoms and that her prognosis was fair. (Tr. at 24, 26, 599-602.) He assessed extreme limitations in Claimant's ability to make judgments on complex work-related decisions; interact appropriately with the public, supervisors, and co-workers; and respond appropriately to usual work situations and to changes in a routine work setting. (Tr. at 26, 600.) She assessed marked limitations in Claimant's ability to

15

understand, remember, and carry out simple and complex instructions and make judgments on simple work-related decisions. (Id.) Dr. Razavipour further assessed extreme symptoms of impulse control, mood disturbance, disturbances of mood or affect, bipolar disorder with a history of manic and depressive syndromes, catatonic or other grossly disorganized behavior, memory impairment, and easily distracted; and marked symptoms of difficulty thinking or concentrating, psychomotor agitation or retardation, emotional instability, pathological inappropriate suspiciousness or hostility, and decreased need for sleep. (Id.) She opined that Claimant would miss five or more days a month due to her mental impairments. (Tr. at 26, 601.) The ALJ gave little weight to Dr. Razavipour's opinion because it was inconsistent with her treatment notes, GAF levels that indicated only mild symptoms, and Claimant's activities of daily living. (Tr. at 26.)

Dr. James A. Binder, M.D., a State agency psychologist, opined that Claimant's depressive and anxiety disorders NOS were non-severe impairments that resulted in mild limitations in maintaining activities of daily living, social functioning, concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 25-26, 489-503.) The ALJ gave Dr. Binder's opinion little weight because it was based on Claimant's subjective allegations. (Tr. at 25-26.)

The ALJ concluded that Claimant was able to control her symptoms through medication and therapy, as reflected by the mild GAF scores. (Tr. at 24.) Nevertheless, he gave Claimant the benefit of the doubt and found severe mental impairments, but concluded that such impairments resulted in no more than occasional limitations of social functioning. (Id.)

The ALJ next addressed the effectiveness of Claimant's treatment and found that it essentially was conservative in nature and effectively treated with medication. (Tr. at 25.) He noted that she did not have any side effects from her medication. (Id.) Accordingly, pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and SSR 96-7p, the Court finds that the ALJ's credibility finding

sufficiently was articulated and explained with references to the specific evidence that formed his decision. Thus, the Court finds that the ALJ's credibility decision is supported by substantial evidence of record.

2. <u>Treating Opinion Evidence</u>.

Claimant also alleges that the ALJ erred in giving little weight to Dr. Razavipour's opinion. (Document No. 11 at 9-11.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling

17

weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2011). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The ALJ gave Dr. Razavipour's opinion little weight because it was inconsistent with her treatment notes, the GAF assessments, and Claimant's activities of daily living. (Tr. at 26.) As noted

above, treatment notes from Prestera revealed essentially benign mental examination findings. Likewise, Dr. Reynolds' examination failed to document any significant findings or limitations. Furthermore, the GAF assessments continued to increase and Dr. Razavipour noted in April, 2012, that her GAF was 65, which was indicative of only mild symptoms. Thus, such positive examination findings, together with mild GAF assessments contradict Dr. Razavipour's marked and extreme limitations. Furthermore, Claimant's activities included reading, driving her daughter to school, attending weekly Sunday school and church, doing crossword puzzles, and caring for her nine-year old daughter on a daily basis. (Tr. at 26, 194-201, 487.) In view of the foregoing, the undersigned finds that the ALJ's decision to accord little weight to Dr. Razavipour's opinions is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 12.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

.        The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2015.

R. Clarke VanDervort
United States Magistrate Judge